**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPORT DIMENSION, INC., | ) | Civil Action No. 22-cv-6945 |
| | ) | |
| Plaintiff, | ) | Judge Charles P. Kocoras |
| | ) | |
| v. | ) | |
| | ) | |
| THE INDIVIDUALS, CORPORATIONS, ETC. IDENTIFIED ON SCHEDULE A, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS BSCSTORE (DEFENDANT #7), KNOW WHITE (DEFENDANT #11), JOIE STORE (DEFENDANT #10) AND SIUMASK (DEFENDANT #14) FOR AN ORDER (1) DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, (2) MODIFYING PRELIMINARY INJUNCTION TO VACATE ASSET RESTRAINT AND ALLOW DEFENDANTS TO MAKE A DEPOSIT INTO COURT IN LIEU OF ASSET RESTRAINT**

Defendants BSCstore (Defendant #7), Know White (Defendant #11), Joie Store (Defendant #10) and SiuMask (Defendant #14) (collectively the "Moving Defendants") submit this memorandum of law in support of their motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to allow the Moving Defendants to obtain relief from the restraint and freeze of their Amazon accounts upon the deposit of $42,398.95 with the Court in lieu of the asset restraint.

## PRELIMINARY STATEMENT

This case should never have been filed in this Court in the first place because this case simply has no connection to the State of Illinois or this judicial district other than Plaintiff's counsel being located in Chicago. Plaintiff's principal place of business is in Carson, California. [Complaint ¶ 6.] Each of the Moving Defendants is a Chinese company who only sells products through Amazon online stores. None of the Moving Defendants has sufficient contacts with the State of Illinois or this judicial district to support the exercise of personal jurisdiction or venue over any of the Moving Defendants. This case accordingly should be dismissed against each of the Moving Defendants pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (for lack of personal jurisdiction) and Rule 12(b)(3) of the Federal Rules of Civil Procedure (for improper venue).

On December 14, 2022, the Court entered a temporary restraining order (Docket #21) (TRO) and on March 1, 2023 the Court entered a preliminary injunction (Docket #56) in this matter. As part of the TRO and preliminary injunction, the Court ordered that all funds in the Amazon accounts maintained by Moving Defendants be frozen and restrained during the pendency of this action. It appears that the Court ordered such asset restraints without any proof from Plaintiff as to how much was in the Amazon accounts of the Moving Defendants or

1

how much revenue the Moving Defendants earned from the sale of the product at issue in this case.

Approximately $950,000.00 has been frozen and restrained in the Amazon accounts maintained by the Moving Defendants because of the TRO and preliminary injunction. However, the Moving Defendants collectively only earned $42,398.95 in gross revenue from the sale of the product at issue. Consequently, as can be seen, more than $900,000.00 in funds currently are frozen and restrained in the Moving Defendants' Amazon accounts even though such funds have nothing to do with and were not derived from the sale of the product at issue in this case.

If the Court will not dismiss this case, the Moving Defendants request the following relief: (1) an order pursuant to Rule 67 of the Federal Rules of Civil Procedure and Local Rule 67.1 authorizing the Moving Defendants to deposit $42,398.95 with the Court in lieu of an asset restraint or freeze; and (2) an order modifying the preliminary injunction against the Moving Defendants to lift and vacate the asset restraint and freeze against the Amazon accounts maintained by the Moving Defendants upon the deposit with the Court of the sum of $42,398.95.

## ARGUMENT

A. This Case Should Be Dismissed Pursuant To Rule 12(b)(2) Of The Federal Rules Of Civil Procedure Because None Of The Moving Defendants Has Sufficient Minimum Contacts With The State Of Illinois To Support The Exercise Of Personal Jurisdiction

Dismissal for lack of personal jurisdiction is governed by Rule 12(b)(2) of the Federal Rules of Civil Procedure. When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant. [*Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004).]

2

Plaintiff's Complaint against the Moving Defendants asserts a single count of design patent infringement. To determine whether the court has personal jurisdiction over a nonresident defendant in a patent case like this one, the court applies "the law of the federal circuit rather than that of the regional circuit in which the case arose." [Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)); David White Instruments, LLC. v. TLZ, Inc., No. 02 C 7156, 2003 WL 21148224, at *9 (N.D. Ill. May 16, 2003).]

The district court may exercise personal jurisdiction over the defendant in a patent infringement case if (1) jurisdiction exists under the state long-arm statute and (2) exercise of jurisdiction would be consistent with the limitation of the due process clause. [Trintec Indus. v. Pedre Promotional Prods., 395 F.3d 1275, 1279 (Fed. Cir. 2005) (citation omitted).] The Illinois long-arm statute allows the exercise of jurisdiction to the full extent allowed by the Fourteenth Amendment's Due Process Clause. [See Brook v. McCormley, 873 F.3d 549, 552 (7th Cir. 2017); 735 Ill. Comp. Stat. 5/2-209(c).] Therefore, the state and federal constitutional requirements are the same. [See Brook, 873 F.3d at 552.]

As interpreted by the United States Supreme Court, the Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test for a federal court to properly exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have "minimum contacts" with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." [International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 158 (1945).]

Personal jurisdiction may be general or specific. [See Brook, 873 F.3d at 552.] Neither standard is satisfied in this case:

3

1.  There is No General Jurisdiction

A court has general jurisdiction over a defendant only if it has continuous and systematic connections to the forum state. [*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).] General jurisdiction means that the defendant is so "at home" in the forum state that it can be sued there for anything, even a claim that has no nexus to the state at all. [*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).] The general jurisdiction standard is an extremely demanding standard that requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes. [*See uBID, Inc. v. Godaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010).]

The Moving Defendants submit the Declarations of Jinxiong Li ("J. Li Dec."), Enming Li ("E. Li Dec."), Ruilin Zhang ("Zhang Dec.") and Ming Du ("Du Dec.") in support of this Motion.[1] As set forth in these Declarations, none of the Moving Defendants – all of whom are Chinese companies with their principal places of business in China -- has such "systematic and continuous" contacts with the State of Illinois to make them "at home" in Illinois and therefore subject to general jurisdiction. [See J. Li Dec. ¶¶ 3-12; E. Li Dec. ¶¶ 3-12; Zhang Dec. ¶¶ 3-12; Du Dec. ¶¶ 3-12.]

2.  There is No Specific Jurisdiction

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." [*Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (*citing Burger King Corp. v.

---

[1] Jinxiong Li is the Chief Executive Office of defendant BSCstore. Enming Li is the Director of defendant Know White. Ruilin Zhang is the Director of defendant Joie Store. Ming Du is the Chief Executive Officer of defendant SiuMask.

*Rudzemcz*, 471 U.S. 462, 472 (1985)).] "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice...." [*Id*. (*citing* *International Shoe*, 326 U.S. at 316).]

Stated another way, there must be sufficient minimum contacts such that the nonresident defendant "should reasonably anticipate being haled into court" in the forum state. [*Burger King*, 471 U.S. at 474.] Consequently, the due process clause does not permit jurisdiction to be based on contacts with the forum that are random, fortuitous, or attenuated. [*Id*. at 475.]

Specific jurisdiction may not lie where the plaintiff is "the only link between the defendant and the forum." [*Walden v. Fiore*, 571 U.S. 277, 285 (2014).] Consequently, the fact that Plaintiff's attorney is located in Chicago is meaningless to the jurisdiction analysis. "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." [*Id*.]

None of the Moving Defendants has sufficient "minimum contacts" with the State of Illinois to allow the exercise of personal jurisdiction consistent with due process requirements. As set forth in the Declarations of Jinxiong Li, Enming Li, Ruilin Zhang, and Ming Du, the only contacts by any of the Moving Defendants with the State of Illinois connected with this case are a few random, fortuitous, and attenuated sales of the product at issue. [See J. Li Dec. ¶¶ 3-17; E. Li Dec. ¶¶ 3-17; Zhang Dec. ¶¶ 3-17; Du Dec. ¶¶ 3-17.] Specifically, the Moving Defendants made the following small number of sales of the product at issue in the State of Illinois:

    BSCstore: 6 pieces sold in Illinois out of 496 pieces sold worldwide
    Know White: 8 pieces sold in Illinois out of 170 pieces sold worldwide
    Joie Store: 33 pieces sold in Illinois out of 768 pieces sold worldwide
    SiuMask: 8 pieces sold in Illinois out of 503 pieces sold worldwide

Critically, all of the foregoing sales were initiated by the purchasers of the products by unilaterally accessing the Moving Defendants' Amazon stores. Such sales were not solicited by the Moving Defendants. Indeed, none of the Moving Defendants has ever directed advertising or marketing at potential customers in the State of Illinois or targeted purchasers in the State of Illinois. And most important, none of the Moving Defendants anticipated being sued in the State of Illinois based on the small number of random sales of the product at issue to purchasers in Illinois. [See J. Li Dec. ¶¶ 11-17; E. Li Dec. ¶¶ 11-17; Zhang Dec. ¶¶ 11-17; Du Dec. ¶¶ 11-17.]

The Seventh Circuit has cautioned that courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." [*Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010).] The concern expressed by the Seventh Circuit is exactly the situation here: the only connection between the Moving Defendants and the State of Illinois is that the Moving Defendants operate Amazon stores that are accessible in the State of Illinois.

The decision in *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011) is squarely on point with this case. In its *be2* decision, the Seventh Circuit made clear that nonresident defendants like the Moving Defendants here may not be subject to personal jurisdiction in a particular state simply because residents of the state bought product from an online site operated by the nonresident defendant, explaining:

> "Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market. If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."

6

[642 F.3d at 558.]

As made clear by the foregoing authorities, none of the Moving Defendants has sufficient contacts with the State of Illinois to permit the exercise of personal jurisdiction so this case must be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Dismissal also is required because exercising personal jurisdiction over the Moving Defendants would offend notions of fair play and substantial justice. The factors that the Court must consider are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." [Tamburo, supra, 601 F.3d at 709 (quoting Burger King, 471 U.S. at 477).]

Application of these factors demonstrates that personal jurisdiction may not be exercised over the Moving Defendants consistent with due process requirements. The State of Illinois has no interest in litigating this case given that Plaintiff is located in California and the Moving Defendants all are Chinese companies. Neither Plaintiff nor any Illinois resident has suffered any injury in Illinois. It will be extremely burdensome and unfair for the Moving Defendants to be forced to litigate in Illinois when they have no connection to the state. Plaintiff can seek relief in California where it is located and where the Moving Defendants use a warehouse facility. Simply put, exercise of personal jurisdiction over the Moving Defendants would run afoul of traditional notions of fair play and substantial justice, thereby mandating dismissal for this additional reason.[2]

---

[2] Rule 4(k)(2) of the Federal Rules of Civil Procedure does not support personal jurisdiction over the Moving Defendants in the State of Illinois because the Moving Defendants are subject to personal jurisdiction in the State of California. [See [See J. Li Dec. ¶ 13; E. Li Dec. ¶ 13; Zhang Dec. ¶ 13; Du Dec. ¶ 13.]

> B.  The Case Should Be Dismissed Because Venue Is Not Proper In This Judicial District

This case also must be dismissed against the Moving Defendants because venue is not proper in this judicial district. In *TC Heartland LLC v. Kraft Food Group Brands LLC*, __ U.S. __, 137 S.Ct. 1514 (2017), the Supreme Court held that the patent venue statute, 28 U.S.C. § 1400(b), is the exclusive venue provision for patent infringement cases. [*Id.* at 1517.]

Under Section 1400(b), an action for patent infringement may be brought either: (1) in the judicial district where the defendant resides; or (2) where the defendant has committed acts of infringement and maintains a regular and established place of business. [*Id*. At 1517.] As to the first prong, a corporation "resides" in only its state of incorporation. [*Id.*] Because all of the Moving Defendants are Chinese businesses, none of the Moving Defendants "resides" in this district for the purposes of the patent venue statute. Accordingly, Plaintiffs can establish proper venue, if at all, only under the second prong of the *TC Heartland* test.

To establish proper venue under the second prong, Plaintiffs must demonstrate three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." [*In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).] A "regular and established place of business" means "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" [*In re Google LLC*, 949 F.3d 1338, 1344 (Fed. Cir. 2020).]

As set forth in the Declarations of Jinxiong Li, Enming Li, Ruilin Zhang, and Ming Du, none of these requirements are met here. Accordingly, Plaintiff

8

cannot meet the second prong of the *TC Heartland* test as to any of the Moving Defendants.

That the Moving Defendants are foreign businesses does not support venue in this judicial district. Since the Moving Defendants are foreign businesses, venue would be proper in any judicial district where the court can exercise personal jurisdiction. [*See In re HTC Corp.*, 889 F.3d 1349, 1358 (Fed. Cir. 2018).] For the reasons already discussed, none of the Moving Defendants is subject to personal jurisdiction in the State of Illinois or this judicial district. Venue accordingly is not proper in this judicial district and dismissal is required pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

    C.    <u>If The Court Will Not Dismiss This Case, The Court Should Lift The Asset Restraint On The Moving Defendants' Amazon Accounts Upon The Deposit By The Moving Defendants Of The Sum Of $42,398.95</u>

The Court has discretion to determine the appropriate scope of the preliminary injunction it entered in this case. [*Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010).] In particular, the Court must make sure the injunction is not "more burdensome to the defendant than necessary to accord complete relief." [*CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 712 (7th Cir. 2021).]

Although the Court in exercising its discretion may order a limited asset freeze, the Court "may not issue an injunction freezing assets in an action for money damages." [*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *see also* United States v. Sriram, 147 F. Supp. 2d 914, 948 (N.D. Ill. 2001) ("Rule 65 does not authorize an injunction to freeze assets merely because a plaintiff fears that by the time a judgment is obtained the assets will have been dissipated.").] Where a suit seeks equitable relief such as an accounting or an

9

award of the defendant's profits, a limited restraint on assets may be proper. [<u>CSC Holdings</u>, 309 F.3d at 996.]

Critically, any asset restraint or freeze must be limited to <u>exactly the equitable relief available</u> -- an award of a defendant's profits. [<u>See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.</u>, 970 F.2d 552, 559-60 (9th Cir. 1992); <u>Sweet People Apparel, Inc. v. Fame of NY, Inc.</u>, 2011 WL 2937360 (D.N.J. July 19, 2011) (asset freeze allowed in case seeking equitable accounting of defendants' profits); <u>Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.</u>, 51 F.3d 982, 987 (11th Cir. 1995); <u>The North Face Apparel Corp. v. TC Fashions, Inc.</u>, 2006 WL 838993 (S.D.N.Y. March 30, 2006) (courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits").]

The United States Supreme Court has made clear that any asset freeze must be limited <u>to only the amount necessary to preserve the equitable remedy of a possible award of profits</u>. [<u>Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308 (1999) (barring restraint to preserve assets in anticipation of award of damages at law, but distinguishing the case of equitable remedies); <u>Klipsch Group, Inc. v. Big Box Store Ltd.</u>, 2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012) ("[W]hile the Court . . . has the power to freeze assets to preserve a later award of an equitable accounting, such a freeze should be confined in scope to the likely profits of counterfeiting activity").]

Given the foregoing well-settled authorities, there is no legal basis or justification here for a prejudgment freeze of assets beyond those reasonably necessary to secure any equitable recovery of profits by Plaintiff. In other words, any asset restraint against the Moving Defendants here <u>must be limited to the profits earned by the Moving Defendants from the sale of the product at issue</u>.

Here, Plaintiff obtained a TRO without notice to any of the Moving Defendants (Docket #21) which included a freeze and restraint of all monies in the

10

Moving Defendants' Amazon accounts. The asset restraint ordered by the TRO was continued by the preliminary injunction (Docket #56) ordered by the Court. Because of the asset restraint and freeze ordered by the TRO and preliminary injunction, all funds in the Moving Defendants' Amazon accounts were restrained and frozen regardless of the derivation of such funds. The total sum of $950,000.00 has been restrained and frozen, calculated as follows:

> BSCstore Restrained Funds: $590,000.00
>
> Know White Restrained Funds: $210,000.00
>
> Joie Store Restrained Funds: $95,000.00
>
> SiuMask Restrained Funds: $55,000.00

[J. Li Dec. ¶ 18; E. Li Dec. ¶ 18; Zhang Dec. ¶ 18; Du Dec. ¶ 18.]

As demonstrated by the Declarations of Jinxiong Li, Enming Li, Ruilin Zhang, and Ming Du, the total <u>revenues</u> earned by the Moving Defendants from the sale of the product alleged by Plaintiff to infringe its design patent <u>were only $42,398.95</u>. This amount is calculated as follows:

> BSCstore Total Revenues: $6,969.28
>
> Know White Total Revenues: $4,000.92
>
> Joie Store Total Revenues: $19,441.43
>
> SiuMask Total Revenues: $11,987.32

[J. Li Dec. ¶ 14; E. Li Dec. ¶ 14; Zhang Dec. ¶ 14; Du Dec. ¶ 14.]

Given that they only earned total revenues of $42,398.95 from the sale of the product at issue, the Moving Defendants submit that any freeze against their Amazon accounts <u>must be limited to $42,398.95</u> (which sum actually is greater than total profits) as made clear by the authorities cited above.

Equitable considerations also support only a very limited asset freeze here. The funds currently frozen in the Moving Defendants' Amazon accounts represent virtually all of the Moving Defendants' available funds for their business

11

operations. Because of the freeze, the Moving Defendants cannot withdraw any funds from their Amazon accounts even though the overwhelming portion (more than $900,000) of the account balances derive from the sale of products other than the product at issue in this lawsuit. [See J. Li Dec. ¶¶ 18-28; E. Li Dec. ¶¶ 18-28; Zhang Dec. ¶¶ 18-28; Du Dec. ¶¶ 18-28.]

Because the Moving Defendants can withdraw no funds from their Amazon accounts, they do not have enough money available to pay employees, pay suppliers for product already purchased, or buy new product. Consequently, the TRO and preliminary injunction have effectively shut down the Moving Defendants' businesses at present and the Moving Defendants likely will be forced out of business permanently if they are not granted relief from the asset freeze ordered by the TRO and continued by the preliminary injunction. [Id.]

Such an unfair and inequitable result militates for a substantial modification of the asset freeze, especially given that the Moving Defendants only attained $42,398.95 in total revenues from the sale of the product at issue yet $950,000 has been frozen in the Moving Defendants' Amazon accounts.

In *Peanuts Worldwide LLC v. Yingsheji Jiatingyongpinyouxiangongsi*, Case No. 21-cv-05863 ("*Peanuts*"), this Court dealt with the same situation present in this case.[3] Like Plaintiff here, the plaintiff in *Peanuts* obtained a TRO without notice to any defendant. The TRO ordered a broad asset freeze against the entire account balances in the online accounts of the defendants, including the entire balance in the Amazon account of defendant Yingsheji Jiatingyongpinyouxiangongsi ("Yingsheji"). The total amount frozen in Yingsheji's Amazon account was "tens of thousands of dollars."

---

[3] A copy of the relevant order by the Court in the *Peanuts* case is submitted as Exhibit 1.

12

Yingsheji then opposed the entry of the preliminary injunction against it on the ground, *inter alia*, that the asset freeze sought by the plaintiff was "extremely burdensome" because the amount in its Amazon account far exceeded the profit it earned from the sale of the accused product. In support of its opposition, Yingsheji introduced evidence it only earned $59.38 in profit from the sale of the accused product. Like the relief the Moving Defendants seek here, Yingsheji asked the court to lift the asset freeze and instead let it deposit $59.38 with the court, such amount representing the profit Yingsheji earned from the sale of the accused product.

The court agreed with Yingsheji. It lifted the asset freeze because the amount of the funds frozen in Yingsheji's Amazon account far exceeded the profit it earned and it let Yingsheji deposit $59.38 with the court in lieu of an asset freeze.

Similarly, the decision in *Klipsch Group, Inc. v. Big Box Store Ltd.*, 2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012) ("*Klipsch*") illustrates application of the above principles on facts analogous to those here. In *Klipsch*, the plaintiff – like Plaintiff here – sued a panoply of defendants alleging that the defendants were selling counterfeits of the plaintiff's headphones and related devices. One defendant was a company named DealExtreme.com ("DealExtreme").

Like Plaintiff here, the plaintiff in *Klipsch* obtained a TRO against all defendants without notice as done here. The TRO obtained by the plaintiff in *Klipsch* also had an asset freeze provision like the TRO here.

The plaintiff in *Klipsch* then used the temporary restraining order to obtain a freeze of $2 million in funds in one of DealExtreme's PayPal accounts. Responding to the OSC issued by the *Klipsch* court as to why a preliminary injunction should not be issued, DealExtreme argued that the asset freeze obtained on an ex parte basis by the plaintiff was grossly excessive and urged the court to

13

substantially reduce the amount frozen. To support its objection to the asset freeze, DealExtreme submitted a declaration showing DealExtreme had only earned a minimal amount of profits from the sale of the accused products.

Emphasizing that the amount of an asset freeze in a preliminary injunction may not extend beyond the profits likely earned from the sale of the alleged counterfeit goods, the <u>Klipsch</u> court reduced the amount frozen in DealExtreme's PayPal account from the $2 million obtained by the plaintiff on an ex parte basis to $20,000, which was the profit likely earned by DealExtreme from the sale of the accused products.

This case presents the same scenario as <u>Peanuts</u> and <u>Klipsch</u>. Like the plaintiffs there, Plaintiff here obtained a freeze on all of the funds in the Moving Defendants' Amazon accounts even though such accounts have substantial funds not derived from and have nothing to do with the sale of the product at issue in this case. Such freeze is excessive and inequitable as was the case in <u>Peanuts</u> and <u>Klipsch</u>.

The Moving Defendants here have shown they only earned total revenues of $42,398.95 from the sale of the product alleged to be infringing. The Moving Defendants also have shown why equitable factors mandate that the asset freeze be lifted and they be allowed to deposit $42,398.95 with the Court in lieu of an asset freeze.

As this Court did in <u>Peanuts</u> and the court did in <u>Klipsch</u>, the Moving Defendants respectfully submit that the Court should grant this Motion and give them relief from the asset freeze provisions in the preliminary injunction.

SUMMARY OF RELIEF REQUESTED

The Moving Defendants request that the Court dismiss this action in its entirety against the Moving Defendants pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure because the Moving Defendants

do not have sufficient contacts to subject them to personal jurisdiction in the State of Illinois and venue is not proper in this judicial district.

If the Court will not dismiss this case against the Moving Defendants, the Moving Defendants request the following relief: (1) entry of an order pursuant to Rule 67 of the Federal Rules of Civil Procedure and Local Rule 67.1 authorizing the Moving Defendants to deposit $42,398.95 with the Court in lieu of an asset restraint or freeze; and (2) entry of an order modifying the preliminary injunction against the Moving Defendants to lift and vacate the asset restraint and freeze against the Amazon accounts maintained by the Moving Defendants upon the deposit with the Court of the sum of $42,398.95

Respectfully submitted March 24, 2023

By: /s/ Gregory P. Goonan
Gregory P. Goonan
*Pro Hac Vice* Pending
Email: ggoonan@affinity-law.com
THE AFFINITY LAW GROUP
5230 Carroll Canyon Road, Suite 230
San Diego, CA 92121
Tel: 858-412-4296

David M. Zinder
LAW OFFICES OF DAVID M. ZINDER
Suite 105
40 Skokie Boulevard
Northbrook, Illinois 60062
Tel: (224) 330-1712
Email: dzinder@dmzlaw.com

Attorneys for Defendants
BSCstore, Know White, Joie Store,
And SiuMask

15